### LAMAR v. POOL.

1. *Wilks* v. *Walker*, 22 *S. C.*, 108, and *Austin, Nichols & Co.* v. *Morris*, 23 *Id.*, 393, stated. These cases declare that an instrument *intended* to operate as an assignment with preferences is void, but that an indebted party may lawfully make a mortgage, when it is *intended* only to secure one creditor in preference to another.

2. Where the master and Circuit Judge differ in their findings of fact in a case in chancery, these matters come before this court as open questions, uninfluenced by the findings below. In this case the conclusions reached by the Circuit Judge were approved.

3. A paper may be fraudulent at common law, or under the statute of Elizabeth, and yet be free from attack under section 2014 of General Statutes. To render an instrument void under this section, it must be (1st) an assignment, and (2nd) a preference therein given; and it matters not whether such preference be fraudulent or not.

4. A mortgage given by an insolvent debtor to one of his creditors, covering all of his property, for the purpose of securing the mortgagee, and not with intent to evade the assignment law, is not void under section 2014.

5. And this mortgage having been cancelled before action brought, the court could not grant any relief to the suing creditor under this action.

Before FRASER, J., Laurens, September, 1886.

This was an action by Henry J. Lamar, sr., and others, partners, trading under the firm name of Lamar, Rankin & Lamar, against William H. Pool and Martin B. Pool, commenced March 7, 1885. The mortgage assailed was given September 15, 1884, to secure certain past due debts, and thus was instantly payable. The Circuit decree was as follows:

The case came before me at the term of the court held for Laurens County in September, 1886, on the report of the master and exceptions. The purpose of this action is to have a certain mortgage executed by W. H. Pool to his co-defendant, Martin B. Pool, declared void as an assignment in violation of the provisions of the statutes of this State in reference to preferences given by insolvent debtors to some creditors to the exclusion of others. The complaint does not sufficiently allege actual fraud to make it a ground of relief in this case. As I understand the

report of the master, he does not find that there was actual fraud, and the testimony would not have been sufficient to warrant such a finding.

I am obliged to concur in the finding of fact, that at the time of the execution of the mortgage W. H. Pool was insolvent. I have examined the testimony in this case, and while the mortgage did cover all the property of W. H. Pool of which we have in this case any evidence, I think that the evidence is in favor of the view that the mortgage was given *bona fide* as a security, and not as a preference; and though it might have been, if the mortgage had been foreclosed, that all other creditors would have been defeated. In the case of *Austin, Nichols & Co.* v. *Morris* (23 *S. C.*, 393), which is relied on here by the plaintiffs, there was not only a mortgage of all the property of the debtor, but a sale was made at short notice, and with the consent of the debtor, mortgagor, to the sale, by which all the property was transferred to the mortgagee. The court held this to be an assignment.

In the case before the court, one of the exceptions of the plaintiffs is that the master did not find "specifically, as a matter of fact, that the defendant, Martin B. Pool, took charge of and disposed of the entire stock of goods of his co-defendant, W. H. Pool." An examination of the testimony convinces me that the master would not have been justified in such finding. The stock of goods was worth at least $5,000, and Martin B. Pool did not receive more than $2,400 from it. Whatever he may have said to one of the witnesses, the testimony shows that in fact he never took control of the goods under the mortgage; that he did not interfere with the clerks of W. H. Pool, who sold the goods and paid over the proceeds to him, W. H. Pool, in the same way they would have done if there had been no mortgage, and that before the commencement of this action the mortgage was "cancelled" on the record in the proper office. A part of these goods were sold by the mortgagor's own act to Dr. J. T. Pool in bulk.

I cannot, therefore, regard this mortgage and the subsequent dealings with the property as an assignment in form or in substance. It is announced in *Austin, Nichols & Co.* v. *Morris, supra,* in the opinion of both the Associate Justices who concur in the opinion of a majority of the court, that a "man may by a

*bona fide* mortgage, which is intended merely as a security, prefer one creditor." Such, I am satisfied, was the purpose of this mortgage, and even as a security, Martin B. Pool gave it up before half of the value of the mortgaged property was paid to him, and if these suing creditors had resorted to proceedings supplementary to their execution, the only true test of insolvency, it may be that this action would not have been deemed necessary. I do not see any better reason why Martin B. Pool shall in this case be called on to refund for the benefit of other creditors what has been paid to him, than that these plaintiffs would have been in case they had been, if they had been fortunate enough to have their drafts paid to the bank when presented for payment to W. H. Pool who now appears to have been then insolvent.

I conclude, therefore, that neither the case of *Austin, Nichols & Co.* v. *Morris, supra*, or *Wilks* v. *Walker*, 22 *S. C.*, 108, justifies the conclusion that this mortgage is void as an assignment under our statutes. It is therefore ordered and adjudged, that the report of the master be overruled and the complaint dismissed with costs.

From this decree plaintiffs appealed on the following grounds:

I. Because his honor erred in holding that the complaint did not sufficiently allege fraud, and that such allegation was necessary.

II. Because his honor erred in holding that the mortgage was executed *bona fide* as a security, and not as a preference.

III. Because his honor erred in not holding with the master, that William H. Pool intended by the execution of the mortgage to transfer absolutely all of his tangible property to Martin B. Pool to the exclusion of all other creditors, and to prefer Martin B. Pool over all other creditors.

IV. Because his honor erred in not holding with the master, that the mortgage was intended to accomplish, and has accomplished, the purpose of an assignment, by which Martin B. Pool was preferred and benefited to the exclusion of all other creditors of William H. Pool, and that said mortgage is void under the statutes.

V. Because his honor erred in holding that Martin B. Pool

never took possession of the goods under the mortgage, and that the goods were disposed of in the ordinary course of business by William H. Pool.

VI. Because his honor erred in not holding that Martin B. Pool is liable for the value of the stock of goods embraced in the mortgage, and should account therefor.

*Messrs. J. T. Johnson* and *N. B. Dial*, for appellants.

*Mr. W. H. Martin*, contra.

April 19, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. William H. Pool, respondent, merchandising at Laurens C. H., being largely indebted to Martin B. Pool (the other respondent) for moneys advanced him to commence business and to aid him in the continuance thereof, as it is alleged, executed a mortgage to the said Martin B., embracing his entire mercantile assets, goods, wares, &c., actual and prospective, to secure the payment of said indebtedness, aggregating $6,800, with authority on the part of the said Martin upon default of payment to take possession and to sell the same, returning the surplus, if any, to the said Wlliam H., &c., which was recorded. William H. Pool was quite ill at the time, and during his illness, after the execution of this mortgage, Martin was frequently about the premises, but it does not seem that he took possession under the mortgage. The clerks of W. H. continued to sell the goods as usual, and from the proceeds of sales paid to Martin some $2,400 on his claims. W. H. Pool recovered, and soon thereafter the mortgage was marked "cancelled" on the record January 20, 1885, and the remainder of the goods were sold by W. H. Pool.

In February, 1885, the plaintiffs obtained a judgment against W. H. Pool on account for goods sold, amounting to $24.85, execution was issued and a return of *nulla bona* made, whereupon the action below was instituted in behalf of the plaintiffs and such other creditors as might come in, demanding judgment that the mortgage be adjudged an assignment for the benefit of the creditors of W. H. Pool, that Martin B. Pool be adjudged the

assignee, and that an accounting be had, &c. The case was referred to the master "to hear and determine all issues of law and fact," to be reported to the court, who found and reported as matters of fact: "I. That at the time of the execution of the mortgage the defendant, W. H. Pool, was insolvent, and that he knew himself to be so. II. That he intended by the execution of the mortgage to Martin B. Pool to transfer all of his tangible property, to the exclusion of his other creditors, and to prefer him over all other creditors. III. That the mortgage has accomplished, and was intended to accomplish, the purpose of an assignment," Martin B. Pool being preferred, &c. And he recommended that the plaintiffs have judgment, declaring the mortgage void under section 2014, General Statutes, requiring the defendants to disclose fully, and to account for all the assets of the mercantile business of the said William H. Pool, &c., and for costs— citing *Wilks* v. *Walker*, 22 *S. C.*, 108; and *Austin, Nichols & Co.* v. *Morris*, 23 *Id.*, 393.

This report, with exceptions, was heard by his honor, T. B. Fraser, who, upon the testimony reported, while sustaining the finding of fact by the master as to the insolvency of W. H. Pool, overruled him as to the object and intent of the mortgage, and found "that the evidence was in favor of the view that the mortgage was given *bona fide* as a security, and not as a preference, although it might have had the effect, if it had been foreclosed, of defeating all other creditors." Upon this finding his honor held that the principle of *Wilks* v. *Walker* and *Austin, Nichols & Co.* v. *Morris*, did not apply, so as to justify the conclusion that the mortgage was void as an assignment under section 2014 of General Statutes. He therefore adjudged that the report of the master be overruled and the complaint be dismissed with costs.

The cases of *Wilks* v. *Walker* and *Austin, Nichols & Co.* v. *Morris* have established the doctrine that it is not absolutely necessary for a paper to be in the form of a general assignment for the benefit of creditors, in which a preference is given to render it void under section 2014, General Statutes, but that any papers, whether single or more than one, connected with each other, operating as an assignment, and *intended* to give a preference,

shall have that effect. In other words, any attempted evasion of the act in form, while the end prohibited is accomplished, though not in violation of the terms of the act, is yet a violation of its spirit, and, therefore, as violative of the act, as though contrary to its express terms in form.

While this is now the conceded law of the State, and must govern in all cases where the intent inhibited appears, yet these cases did not disturb the well established principle that an indebted party might make a mortgage to secure one creditor over another. In the case of *Austin, Nichols & Co.* v. *Morris*, the court, in discussing this question, used the the following language : "A man may, by a *bona fide* mortgage, which is intended merely as a security, *prefer* one creditor." So that in all of these cases where the instrument assailed as contrary to section 2014, does not in its form violate that section, having ear-marks that cannot be mistaken, the question must hinge upon the intent of the parties. Is the paper a *bona fide* mortgage intended as a security, which the law allows ? Or was it intended as an assignment, in which the particular creditor is preferred, the form of the paper having been adopted to evade the act ? This question in such a case becomes a question of fact, and such is the case now before the court. Because we suppose there is no doubt that the instrument assailed here is not in form an assignment for the benefit of creditors, such as that mentioned in section 2014, and which is declared therein to be void, if a preference is given, whether fraudulent or not, the preference itself, without more defeating it.

Upon this vital question, and which, as it appears to us, is the only question in the case, the master and the Circuit Judge differ. There is no difference as to the law under *Wilks* v. *Walker* and *Austin, Nichols & Co.* v. *Morris ;* but the difference is as to whether the facts of this case bring it under those cases, and the law as there settled. Where a referee or master and the Circuit Judge differ upon a question of fact in a chancery case, and there is an appeal on the findings, they come before us as open questions. And in such case it is our duty to examine the testimony and form our conclusions, uninfluenced by the previous findings.[1]

---

[1] The rule as here laid down is sustained by the weight of authority.

This we have done here, and the result of our examination is to sustain the Circuit Judge.

The action below assailed the paper in question as in violation of section 2014, General Statutes. It should be remembered that the question of fraud is not involved under that section. A paper may be fraudulent at common law or under the statute of Elizabeth, and might be avoided on that ground by proper proceedings to that end, and yet it might stand free from attack under section 2014, *supra*. Two things must concur under that section to render an instrument void: 1st. An assignment; and 2nd. A preference given in said assignment; and it is the preference which the act inhibits, whether that preference be founded upon a *bona fide* claim or a fraudulent one. This act, however, does not, as construed by *Wilks* v. *Walker* and *Austin, Nichols & Co.*, v. *Morris*, prevent a debtor from confessing judgment or executing a mortgage to one creditor in advance of another, and when this is done *bona fide*, it is invulnerable to section 2014, *supra;* and even if such preference is fraudulent, if it is not contained in an assignment, while it may be assailed and avoided under the statute of Elizabeth, yet it cannot be assailed

See cases cited in note on page 616 of 12 *S. C. Reports ;* also *Davidson* v. *Moore*, 14 *S. C.*, 266, and *Fields* v. *Hurst*, 20 *Id.*, 296. But in some of the cases where the Circuit Judge reversed the referee's findings of fact, a different principle seems to have been applied. Thus in *Maner* v. *Wilson*, 16 *S. C.*, 481, it is said that where there is a conflict in the testimony, "the judgment of the Circuit Judge is at least *prima facie* right." And in *Verner* v. *McGhee, ante* 250, the court say: "The finding of the court below must be taken to be *prima facie* correct, and in reference to a question of fact, will not be disturbed unless it is clearly against the weight of evidence."

The result of the cases where there has been such conflict, supports the declaration of the Chief Justice, that the judgment of this court is "uninfluenced by the previous findings." For, while the Circuit Judge was sustained in *Thorpe* v. *Thorpe*, 12 *S. C.*, 154, *Maner* v. *Wilson, supra*, *Graham* v. *Nesmith*, 24 *S. C.*, 585, *Gary* v. *Barnwell, Ibid.*, 595, *Verner* v. *McGhee, supra*, and in this case of *Lamar* v. *Pool*, the findings by the referee (or master) were approved in four cases cited in 12 *S. C.*, 616, in *Cothran* v. *Knox*, 13 *S. C.*, 496, *Bank* v. *Wando Co.*, 17 *Id.*, 340, *Tompkins* v. *Tompkins*, 18 *Id.*, 3, *Koon* v. *Munro, Ibid.*, 374, and *Whaley* v. *Houser, Ibid.*, 602. In *Fields* v. *Hurst*, 20 *S. C.*, 282, the Circuit Judge was sustained in part, and in part the referee.—REPORTER.

under section 2014. Because two conditions must be present to render that section applicable, to wit, an assignment and a preference, and it makes no difference whether the preference is fraudulent or not.

The difficulty in the examination of cases like that before the court under section 2014 seems to be in keeping the two classes of cases mentioned above perfectly distinct, and in remembering that said section is not, and was not, intended as a substitute to the statute of Elizabeth—that it was not intended to afford a new remedy against fraudulent deeds, mortgages, and such like papers. The law was abundant by which such papers could be avoided at the time of the passage of that act, and it was not passed to remedy the evil of such fraudulent papers; but it was enacted to meet the evil of debtors when they undertook to assign their property for the benefit of their creditors, giving one creditor the advantage in the assignment, and to cut this evil up root and branch, it declared that such a preference, whether *bona fide* or fraudulent, should *instanter*, without looking beyond the fact of preference, avoid the instrument. Unless this distinction is carefully regarded, section 2014 may be applied to a case where the statute of Elizabeth would be the proper and only legal remedy.

But it is important that each of these should be confined within their proper limits, for the reason that a debtor has the right to make a *bona fide* preference, and he has a right, when he has given a preference under the forms in which preferences may be given, to wit, by mortgage, deeds, &c., &c., to have the question of *bona fides* adjudged before his paper is avoided, which can be effectually done by a direct proceeding to that end, whereas, the danger of avoiding under section 2014 a paper which is not clearly an assignment, although there is a preference given, is in confounding a fraudulent preference with a preference in an assignment—in other words, in straining section 2014, so as to vacate any paper in which a fraudulent preference is given to one creditor in advance of others, whether it be in an assignment or not. This was not the purpose of the act as we understand it. It was not intended to raise, or to have considered under it, the question of fraud, but it was intended to accomplish an equal distribution of a debtor's assets, when he yielded said assets to his

creditors, and to effect such equal distribution or at least to prevent the debtor from making any other disposition but an equal one, it imperatively inhibits any preference whatever in the paper in which he surrenders said assets.

Under the light of the distinction above, we have examined the testimony in this case, and we concur with the Circuit Judge that the evidence is not sufficient to show an assignment with a preference in it such as is contemplated by section 2014; nor does it sufficiently appear that the paper in question was executed with the view to evade the act. It has all the forms and incidents of an ordinary mortgage. It was recorded as such, and the parties no doubt understood it to be a mortgage. The mortgagee does not seem to have exercised any of the rights of an assignee under it, by taking possession, &c. It is true, had it been foreclosed, it would have defeated all other creditors to the extent of the property embraced, and it was a preference. But these are the incidents to every mortgage as to the property embraced, given by a man who is indebted to others besides his mortgagee. It may have been fraudulent in intent and purpose, but even if so, as we have said, this would not give jurisdiction under the act. We find no testimony that there was a conspiracy between debtor and creditor to evade the act by adopting the form of a mortgage to one creditor instead of that of an assignment for creditors generally with a preference to one creditor. In fact, we find nothing but a regular ordinary mortgage, in form as such, recorded as such, and acted under as such by the mortgagee; or at least no rights asserted thereunder except such as a mortgagee could assert. True, it was made by an insolvent debtor, and it embraced his entire assets, but we cannot see how this fact can bring the case under the operation of section 2014, in the absence of the other requisites to that end. This might be a formidable fact in an assault under the statute of Elizabeth, but it is outside of section 2014.

Besides all this, it seems that Martin B. Pool did not assert any right under his mortgage, and that he cancelled it before the action below was brought. Before its cancellation, the clerks of W. H. Pool continued to sell the goods as formerly. From these sales, Martin B. received some $2,400 on his claim, the mortgage

was then cancelled and the remainder of the goods was sold by W. H. Pool in bulk to another party. So when the action below was brought, Martin had been paid a portion of his debt, just what the plaintiff was trying to have done to his, and there was no mortgage, assignment, or any other lien on the remainder of the goods or their proceeds. Section 2014 declares that an assignment made in violation of its provisions shall be absolutely null and void and of no effect. Even supposing, then, that the mortgage here was an assignment under this act, it has been cancelled, and was void and of no effect at the time the action below was brought, and we do not see what other remedy the court could afford, were the facts even such as it could interpose. Could it do anything more than to declare the assignment void?

It is the judgment of this court, that the judgment of the Circuit Court be reversed.